IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BRIAN ELLENBERGER                                                                                    PLAINTIFF

v.                          Civil No. 2:23-cv-02030-PKH-MEF

JAILER NICHOLUS HAYDEN                                                                       DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Brian Ellenberger, presently an inmate of the Wrightsville Unit of the Arkansas Division of Correction, filed this civil rights action under 42 U.S.C. § 1983. Ellenberger proceeds *pro se* and *in forma pauperis*. Ellenberger's claim arose while he was incarcerated in the Scott County Detention Center ("SCDC"). Specifically, Ellenberger maintains he was denied adequate medical care.

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable P. K. Holmes, III, Senior United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Presently before the Court is the Motion for Summary Judgment filed by Defendant Hayden. (ECF Nos. ECF Nos. 35-37). Ellenberger has responded to the Motion. (ECF No. 42). The Motion for Summary Judgment is ready for decision.

**I.     BACKGROUND**

Ellenberger has high blood pressure and while incarcerated in the SCDC was taking two prescription blood pressure medications. (ECF No. 35-2 at 9). During his deposition, Ellenberger testified that on February 13, 2023, when he went to pill call, Defendant Hayden said

1

something like: "Crap, crap, crap. I gave your medicine to Donald [Horn]." *Id.* at 10-11. Defendant Hayden then asked if Ellenberger took the same medication as Donald. *Id.* at 10. Ellenberger responded he did not. *Id.* At this point, Defendant Hayden "just told me to take it and put it in my hand, and I – I took it. And then, like, a little later, my throat was swelling up and stuff, and I couldn't hardly swallow, and I was having chest pains." *Id.* Ellenberger told the jailers about his reaction to the medication and submitted a grievance, but nothing was done. *Id.* Further, Ellenberger testified he never received his correct prescription medication that day. *Id.* at 11.

While Ellenberger testified, he did not specifically ask to see a doctor or go to the emergency room, he stated he was asking the jailers to be checked out and told them he was having trouble swallowing and was having chest pains. (ECF No. 35-2 at 11-12). When asked what specific words he used when speaking to the jailers, Ellenberger responded: "That Nicholus Hayden gave me the wrong medicine, and my throat was swelling up, and I couldn't hardly swallow, and I was having chest pains." *Id.* at 12. Ellenberger conceded this was a description of his symptoms. *Id.* The swelling and after-effects went away the following day. *Id.* After February 13, 2023, Ellenberger testified he was given the correct blood pressure medication while he was in the SCDC. *Id.*

When asked if he had anything to suggest Defendant Hayden intentionally gave Donald the wrong medication on purpose, Ellenberger responded: "I mean, he gave me Donald's medicine on purpose. I know that, because he asked me if I took what Donald took. I said, 'No,' but he put it in my hand anyways. I don't even know why I ate it, but I did." (ECF No. 35-2 at 13).

If he had not taken the medication, Ellenberger testified he would not have suffered the

adverse symptoms. (ECF No. 35-2 at 13). He asked Horn what the medication was but could not recall its name at the time the deposition was taken. *Id.* at 14. Ellenberger did not know what health condition the medication was for. *Id.*

In Defendant Hayden's affidavit he states: "On February 13, 2023, I was providing inmates with their prescribed medication when I accidentally gave [Ellenberger] another inmate's medication. I told [Ellenberger] I had given him the wrong medication, yet [Ellenberger] chose to take the medication anyways." (ECF No. 35-1 at 1).

On February 13, 2023, Defendant Hayden wrote an incident report. (ECF No. 35-1 at 3). The report provides as follows:

> At 0550, I went into D pod to give out OTC's and medication. All detainees came to the door to take their medication and I proceeded to give everyone the correct medication. I then let Donald Horn out to take his medication. I put the medication in his hand after he signed, he looked at it clearly, and he proceeded to take it. I then let Donald Horn back into D pod, and brought out Brian Ellenberger. I looked at what I thought was Ellenberger's medication, but was actually Donald Horn's. He then handed the medication back to me, and signed his prescription paper, and went back into D pod. I called Donald back to the door, and he was fully aware that he had taken the wrong meds, and told me that he was ok, and that he would sleep good that night. I then proceeded to do everyone else's medication, and put back Brian Ellenberger's meds.

*Id.*

## II.   LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with

3

the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) that he or she violated a right secured by the constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). There is no question that Defendant Hayden was acting under color of law. The sole question is whether Ellenberger's constitutional rights were violated.

Defendant Hayden moves for summary judgment on the following grounds: (1) the undisputed facts fail to show any deliberate indifference on his part, and (2) he is entitled to qualified immunity.

The Constitution requires prison officials to provide pretrial detainees and convicted prisoners with constitutionally adequate medical care. *Hancock v. Arnott*, 39 F.4th 482, 486 (8th Cir. 2022). "What the Constitution considers 'adequate' in a prison or a jail is significantly different than what a member of the general public would consider 'adequate' for his or her own purposes." *Curtis v. Taylor*, Case No. 4:22-cv-00328, 2023 WL 2499956, *4 (E.D. Ark. March 14, 2023). The Constitution "guarantees a minimal standard of care—pretrial detainees' and prisoners' serious medical needs will not be ignored." *Id.* at 6. Officials may not turn a "blind eye to unmet serious medical needs." *Id.*

In his Complaint and during his deposition, Ellenberger indicated he was incarcerated due to pending criminal charges and a parole violation. (ECF No. 1 at 2; ECF No. 35-2 at 6-7). While the claim of a pretrial detainee is brought under the Due Process Clause of the Fourteenth Amendment, the Eighth Circuit has continually applied the Eighth Amendment's deliberate indifference standard to claims brought by pretrial detainees.[1] *See e.g., Smith v. Lisenbe*, 73 F.4th 596, 600 (8th Cir. 2023). Thus, whatever Ellenberger's status was on February 13, 2023, the same deliberate indifference standard applies.

---

[1] In *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999), the Eighth Circuit acknowledged that pretrial detainee's claims may be entitled to "a more stringent standard than deliberate indifference" but applied the deliberate indifference standard as it did not believe the "facts of this case call for a determination of this issue." The Court further stated that "[r]egardless of whether framed as a subjective or objective test, the alleged deprivation must still be 'sufficiently serious' and 'pose a substantial risk of serious harm.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

5

The deliberate indifference standard includes "both an objective and a subjective component: '[Ellenberger] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Smith*, 73 F.4th at 600.

To demonstrate that he suffered from an objectively serious medical need, Ellenberger must show he "had been diagnosed by a physician as requiring treatment" or had an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted). Ellenberger had been diagnosed with high blood pressure and prescribed two medications. Given these facts, no argument can be made that Ellenberger's high blood pressure did not constitute a serious medical need.

For the second prong, the deliberate indifference standard establishes a high threshold that goes well beyond negligence or gross negligence. *Landford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). There must be evidence Defendant Hayden "recognized that a substantial risk of harm existed *and* knew that [his] conduct was inappropriate in light of that risk." *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) (internal quotations marks and citation omitted) (emphasis in original). A mere disagreement with the course of medical care does not rise to the level of a constitutional violation. "Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment. Medical care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care violates the eighth amendment." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

In this case, Defendant Hayden gave Ellenberger's medication to Horn. Defendant Hayden then presented Horn's medication to Ellenberger despite Ellenberger having said he did not take the same medication as Horn. Although this presents more than accidentally providing the wrong medication to an inmate, the Court does not believe Defendant Hayden can be said to have acted with deliberate indifference. Rather, the Court believes Defendant Hayden demonstrated gross incompetence when he presented Horn's medication to Ellenberger. *See e.g., Jordan v. Karas Health Care*, Civil No. 5:16-cv-05161, 2017 WL 3405551, 4 (W.D. Ark. July 19, 2017) (accidentally giving an inmate the wrong dose of medication on a single occasion at most supports a finding of negligence). This conclusion is buttressed by the fact that Ellenberger knew the medication was not his, but he took it anyway.

While Ellenberger testified Defendant Hayden told him to take the medication, Ellenberger does not contend Defendant Hayden threatened him, forced him to take the medication, or overrode Ellenberger's own refusal to take the medication. In fact, Ellenberger states he does not know why he took the medication. Additionally, Ellenberger testified his symptoms resolved by the following day without any lasting effects. "Claims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Having found no genuine issue of material fact exists as to whether Defendant Hayden violated Ellenberger's constitutional rights, Defendant Hayden is entitled to qualified immunity. *See e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (Unless the facts make out a violation of a constitutional right, the Defendant is entitled to qualified immunity).

## IV.  CONCLUSION

For the reasons stated, it is recommended that Defendant Hayden's Motion for Summary Judgment (ECF No. 35) be **GRANTED and this case be DISMISSED WITH PREJUDICE.**

**Status of Referral: The referral terminates upon the filing of this Report and Recommendation.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of June 2024.

/s/  *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE